IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BARBARA ANN LANE,

    Plaintiff,

v.                                                                                                    CIV 17-1181 KBM

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 17*), filed on May 25, 2018. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 6, 7, 8.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is not well-taken and will be denied.

**I.**     **Procedural History**

Ms. Barbara Lane (Plaintiff) filed an application with the Social Security Administration for Disability Insurance Benefits (DIB) under Title II of the Social Security Act on March 7, 2014. Administrative Record[1] (AR) at 159-62. Plaintiff alleged a disability onset date of May 1, 2012. *See* AR at 159. As Plaintiff applied for DIB only, she was required to prove that she was disabled at some point from May 1, 2012, her

---

[1] Document 12-1 comprises the sealed Administrative Record. *See Doc. 12-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

alleged onset date (AOD), through June 30, 2012, her date last insured (DLI). *See* AR at 24, 87.

Disability Determination Services determined that Plaintiff was not disabled both initially (AR at 82-86) and on reconsideration (AR at 88-95). Plaintiff requested a hearing with an Administrative Law Judge (ALJ) on the merits of her application. AR at 109. Plaintiff, her husband, and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 37-81. ALJ Raul C. Pardo issued an unfavorable decision on November 21, 2016, finding that Plaintiff was not disabled through her DLI. AR at 21-36. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 156-58), which the council denied on October 4, 2017 (AR at 1-6). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II. Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner must use a sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is

expected to last for at least one year; and (3) her impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R § 404.1520(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of her medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

At Step One of the process,[2] ALJ Pardo found that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of May 1, 2012 through her date last insured of June 30, 2012." AR at 26 (citing 20 C.F.R. §§ 404.1571-1576). At Step Two, the ALJ concluded that Plaintiff "had the following severe impairments: irritable bowel syndrome [(IBS)], fibromyalgia, obesity, [and] depression." AR at 26 (citing 20 C.F.R. § 404.1520(c)).

---

[2] ALJ Pardo first found that Plaintiff "last met the insured status requirements of the Social Security Act through June 30, 2012." AR at 26.

3

At Step Three, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 27 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). At Step Four, the ALJ considered the evidence of record and found that through the DLI, Plaintiff "had the [RFC] to perform light work as defined in 20 [C.F.R. §] 404.1567(b). In addition, [she] can never climb ladders, ropes, or scaffolds. [She] can stoop occasionally. She can understand, remember, and carryout both semi-skilled and skilled jobs. [Her] time off task can be accommodated by normal breaks." AR at 28. The ALJ determined that, through the DLI, Plaintiff "was capable of performing past relevant work as an administrative assistant and receptionist[,]" positions which "did not require the performance of work-related activities precluded by" Plaintiff's RFC. AR at 32 (citing 20 C.F.R. § 404.1565). Ultimately, the ALJ found that Plaintiff "was not under a disability, as defined in the Social Security Act, from May 1, 2012, through June 30, 2012, the DLI." AR at 32 (citing 20 C.F.R. § 404.1520(f)).

### III. Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a

4

conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (internal quotation omitted) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)).

## IV. Discussion

Plaintiff contends that ALJ Pardo: (1) improperly rejected two doctors' opinions; (2) inadequately considered Plaintiff's husband's testimony; and (3) failed to account for Plaintiff's "subjective allegations of pain and other symptoms . . . ." *Doc. 17* at 1.

### A. Plaintiff fails to show reversible error in the ALJ's treatment of either Dr. Jones's or Dr. Konstantinov's opinions.

Plaintiff first argues that the ALJ erred in giving little weight to the opinions of Dr. Jones and Dr. Konstantinov, both of whom are licensed medical doctors and acceptable medical sources under the regulations. *See Doc. 17* at 17-22. Dr. Jones was Plaintiff's

treating physician from January 2015, through January 2016 (AR at 540-49, 551-53), and submitted a Medical Assessment of Ability to do Work-Related Activities on September 1, 2016 (AR at 682-83). Dr. Konstantinov, a consulting rheumatologist, examined Plaintiff twice, in September and November 2013 (AR at 400-04), and submitted the same Medical Assessment form on July 17, 2014 (AR at 689-90).

     Dr. Jones opined that Plaintiff can only occasionally lift and/or carry less than five pounds, can stand and/or walk less than two hours and sit less than four hours in an eight-hour workday, is limited in both her upper and lower extremities when pushing and pulling, cannot handle or finger using either hand, has a limited ability to reach, and can never kneel, stoop, crouch, or crawl. AR at 682. Dr. Jones repeatedly noted that Plaintiff's limitations are due to fibromyalgia, a frozen right shoulder, chronic pain, and/or fatigue. AR at 682. Regarding Plaintiff's limitations affecting her non-physical work activities,[3] Dr. Jones assessed marked limitations in every area. AR at 683.

     Dr. Konstantinov opined that Plaintiff can occasionally and frequently lift and/or carry less than five pounds, can stand and/or walk one hour and "[m]ust periodically alternate sitting and standing to relieve pain or discomfort" in an eight-hour workday, cannot pull or push, cannot handle or finger with either hand but is unlimited in reaching, and can occasionally kneel, stoop, crouch, and crawl. AR at 689. Dr. Konstantinov

---

[3] The activities include: (1) "Maintain attention and concentration for extended periods (i.e. 2-hour segments)"; (2) "Perform activities within a schedule"; (3) "Maintain regular attendance and be punctual within customary tolerance"; (4) "Maintain physical effort for long periods without a need to decrease activity or pace, or to rest intermittently (i.e. 2-hour segments)"; (5) "Sustain an ordinary routine without special supervision"; (6) "Work in coordination with/or proximity to others without being distracted by them"; (7) "Make simple work-related decisions"; and (8) "Complete a normal workday and workweek without interruptions from pain or fatigue based symptoms at a consistent pace without unreasonable number and length of rest periods." AR at 683.

made only one note regarding "the medical findings to support [his] opinion" – he attributed Plaintiff's limitations to a "general exam and [her] specific diagnosis." AR at 689. Dr. Konstantinov opined that Plaintiff had marked limitations in all but two areas of non-physical work activities, and in the remaining two areas ("[m]aintain regular attendance and be punctual within customary tolerance" and "[m]ake simple work-related decisions"), he opined that she had moderate limitations. AR at 690. In the comments section under this area of the form, he wrote that Plaintiff's "frequent flares are disruptive and need behavioral adjustments." AR at 690.

Plaintiff argues that ALJ Pardo's analysis of the doctors' opinions is insufficient for two reasons. First, Plaintiff contends that the ALJ failed to discuss the medical records, both from the relevant time period and from the physicians' own examinations. *Doc. 17* at 18-21. And second, Plaintiff argues that ALJ Pardo erred in discounting the opinions on the basis that they did not indicate when the limitations began. *Id.* at 21-22.

### 1. The ALJ sufficiently discussed the record evidence.

Plaintiff first argues that ALJ Pardo failed to adequately discuss the record evidence. *Doc. 17* at 18-19 ("ALJ Pardo's analysis of the medical evidence of record is confined to four paragraphs and does not include any treatment records from 2011-2012"). Plaintiff was charged with proving that she was disabled at some point from May 1, 2012, through June 30, 2012. The ALJ remarked that "there is scant evidence regarding [Plaintiff's] conditions prior to" her DLI and then proceeded to summarize the record *after* the DLI. AR at 30 (discussing medical records from 2013 and after). ALJ Pardo only explicitly mentioned records prior to 2013 at one point in his opinion, and then only in reference to a note that a doctor had made about Plaintiff's medical history

during a 2014 appointment. AR at 31 (discussing AR at 466-72). Specifically, the ALJ noted that Plaintiff "had a colonoscopy in 2011[,]" which "showed superficial ileal erosions; however, biopsies were not consistent with Crohn's disease. A small bowel follow through was normal." AR at 31; *see also* AR at 417 (Sept. 23, 2011 elective colonoscopy with Dr. Michael Gavin), 390-91 (Nov. 7, 2011 follow-up appointment with Dr. Gavin), 422-23 (Dec. 2, 2011 small bowel follow through with radiologist Sean Biggs).

The ALJ also glossed over other records relevant to Plaintiff's diagnoses prior to and/or during the relevant time period. For example, the ALJ mentioned in passing that Plaintiff "reported pain that got worse increasingly over the years[,]" that she had been "self-medicating with Advil[,]" and that she'd complained of a "long history of diffuse musculoskeletal pain." AR at 30. ALJ Pardo also specifically commented on two treatment notes that discuss Plaintiff's 2013 fibromyalgia diagnosis but note that she'd experienced pain for years. AR at 30-31 (discussing AR at 402-03, 466-72).

Plaintiff also complains that the ALJ failed to mention relevant notes from Dr. Konstantinov's examination and neglected to mention Dr. Jones's records at all. *Doc. 17* at 20. As the Commissioner points out, both physicians examined Plaintiff well after her DLI – Dr. Konstantinov saw Plaintiff approximately 15 months after her DLI, and Dr. Jones did not see Plaintiff until more than two and one-half years after her DLI. *See Doc. 19* at 7; AR at 400-04, 540-49, 551-53. More importantly, the Court finds that the physicians' own records do not lend support to Plaintiff's claim. As the ALJ observed (AR at 31), Dr. Jones's treatment notes do not contain evidence of testing or other evidence that would support the restrictive limitations he opined more than two years

8

prior to the date he first saw Plaintiff, nor can the Court find such evidence in Dr. Konstantinov's notes. Although Dr. Konstantinov mentioned that Plaintiff had "developed fatigue and decreased tolerance to pain" several years before he saw her in 2013 (*see* AR at 402), Plaintiff does not adequately demonstrate how that observation bears up in the relevant evidence of record. While Plaintiff submitted medical records that document she sought treatment for IBS during the relevant time period and took Advil for migraines and arthralgias (*see, e.g.*, AR at 390 (Nov. 7, 2011 note that Plaintiff was being seen for an "evaluation of chronic diarrhea" that had been a problem for ten years), 386 & 420 (documenting a Feb. 2012 lactulose breath test), 381 (July 2012 note that Plaintiff used Advil for migraines and arthralgias)), the Court finds that she has failed to establish that ALJ Pardo's findings are not supported by substantial evidence.

The Court agrees that, as a whole, ALJ Pardo's treatment of the record was sub-par. But the Court finds no reversible error in the ALJ's recitation of the record. *See Meikle v. Berryhill*, No. 17-cv-0092 SMV, 2018 WL 344958, at *4 (D.N.M. Jan. 9, 2018) (noting that "Plaintiff must show that the ALJ's findings are not supported by substantial evidence").

### 2. Even if ALJ Pardo erred in discounting the opinions on the basis of the date of the limitations, the error does not require remand.

Plaintiff's second point of error involves the ALJ's statement that neither physician "indicate[d] when [the] limitations began." AR at 31; *see also* Doc. 17 at 21-22. Plaintiff contends that because the Medical Assessment forms request that the physicians "consider patient's medical history and the chronicity of findings as from 2012 to current examination[,]" that necessarily means that the doctors believed the

9

limitations originated at least as early as 2012. *See Doc. 17* at 21-22; AR at 682, 689.

The Court does not agree.

The form directs physicians to:

Please give us an assessment of patient's impairment-related physical limitations. Identify the particular medical findings (i.e., physical exam findings, x-ray findings, laboratory test results, history, symptoms (including pain and other subjective symptoms), etc.[)], which support your assessment of any limitations. Please consider patient's medical history and the chronicity of findings as from 2012 to current examination.

AR at 682, 689. This language does not establish that any opined physical limitations actually began in 2012, it simply asks the physicians to consider the history and findings from a date certain. Further, the doctors' notes on these forms are insufficient to establish that it is their opinion that *all* of the assessed limitations were present beginning in 2012.

This result would be obvious if Plaintiff suffered from limitations due to a known, rather than a progressive, onset. For example, if Plaintiff had been in a car accident in 2014 that resulted in the loss of the use of her right arm, it would be much clearer that any limitations assessed due to this injury originated with the 2014 car accident, not from any pre-2014 medical history and findings. But as Plaintiff's diagnoses are more progressive in nature, it was incumbent on the doctors to specify when each limitation began. As they did not, ALJ Pardo had to make findings regarding Plaintiff's physical limitations based on the record evidence.

Plaintiff cites to *Rivera v. Colvin*, 15cv593 WPL, 2016 WL 9819512 (D.N.M. Oct. 18, 2016), to support her position. *See Doc. 17* at 21. In *Rivera*, the plaintiff submitted new evidence to the Appeals Council after the ALJ denied her claim. *See* 2016 WL

9819512, at *3. The evidence included the same Medical Assessment form as the doctors submitted here, and it specified that the provider was to consider the plaintiff's medical history and findings from 2011 onward – a period that was relevant to the time before the ALJ's decision. *See id.* at *3-5. "When the Appeals Council evaluates whether the ALJ's decision is supported by 'the weight of the evidence currently of record[,]' 20 C.F.R. § 404.970(b), it must consider whether the newly submitted evidence is 'new,' 'material,' and 'chronologically pertinent.'" *Id.* at *4 (quoting *Threet v. Barnhart*, 353 F.3d 1185, 1189, 1191 (10th Cir. 2003); citing *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011)). The *Rivera* court found that the Appeals Council erred in determining that the Medical Assessment form was not new or material, because the form was explicitly related to a time period the ALJ had considered. *Id.* at *5. The Court was not called upon, however, to determine whether the limitations opined in the Medical Assessment form necessarily *began* in 2011. *See id.* Thus, *Rivera* is inapposite.

The Court finds the decision in *Meikle*, 2018 WL 344958, to be more applicable. The *Meikle* plaintiff argued that the ALJ erred in rejecting a physician's opinion on the basis that it did not relate to the relevant time period. *Id.* at *3. There, the physician submitted the same Medical Assessment form, which "ask[ed] the physician to 'consider the patient's medical history and the chronicity of findings as from 2004 to current examination.'" *Id.* at *3 (underlining and citation omitted). The ALJ incorrectly found "that the report did not expressly relate back to the relevant time period . . . ." *Id.* The Court declined to remand on that basis, however, because the plaintiff had not shown that the

11

ALJ's findings were "not supported by substantial evidence[,]" nor that the ALJ had "applied an incorrect legal standard." *Id.* at *4. The same is true here.

The Court finds that the Medical Assessment form's recitation of a date does not dictate that the physicians' opined limitations began on that date. *Cf. Padilla v. Colvin*, 1:15-cv-00412-LF, 2016 WL 8229936, at *4 (D.N.M. 2016) (finding that verbiage on Medical Assessment form "does not demonstrate that [the physician] was treating [the plaintiff] during this time frame, only that the doctor . . . should consider the patient's medical history during this time frame for purposes of the assessment"). Rather, because Plaintiff's diagnoses have imprecise onset dates, and the physicians failed to tie the opined limitations to specific record evidence, the ALJ was justified in finding that the physicians did not indicate when the limitations began. Moreover, even if the physicians intended to imply that all of the opined limitations began in 2012, Plaintiff has not shown that the ALJ's findings were not supported by substantial evidence. The Court finds no reversible error with respect to this issue.

**B. The ALJ adequately considered Plaintiff's husband's testimony.**

Plaintiff next avers that "ALJ Pardo made no mention of Mr. Lane's testimony anywhere in his decision." *Doc. 17* at 22. As the Commissioner observes, this is incorrect. *See Doc. 19* at 13-14. ALJ Pardo noted that Plaintiff's "husband testified that they have been married for eight years and that he cooks for [her]. He accompanies his wife to appointments." AR at 30. Plaintiff clarifies that the ALJ only mentioned this testimony "in the context of narrating, or reciting, the facts[,]" not as a "part of the evidence upon which ALJ Pardo based his decision." *Doc. 22* at 5.

"SSR 06-3p contains the standard for evaluation of third party evidence, such as function reports or testimony from spouses . . . ." *Black v. Berryhill*, 2:17-cv-00153-JNP-EJF, 2018 WL 1472525, at *21 (D. Utah Mar. 7, 2018) (citing SSR 06-3p, 2006 WL 2329939 (Aug. 9, 2006)). The regulation "provides that the ALJ may 'appropriate[ly] . . . consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence.'" *Id.* (quoting SSR 06-3p, 2006 WL 2329939, at *6). "The ALJ need not make specific written findings about each lay witness's credibility if his decision reflects he considered the evidence." *Id.* (citing *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996)).

The Commissioner cites to *Best-Willie v. Colvin*, 514 F. App'x 728 (10th Cir. 2013), in support of her response. *See Doc. 19* at 13-14. In *Best-Willie*, the Tenth Circuit found that "although the ALJ's decision does not expressly address [a] lay witness" statement from the plaintiff's husband, "any error in failing to do so is harmless because 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" 514 F. App'x at 736 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). The same is true in this case.

Here, Plaintiff's husband testified at the hearing before ALJ Pardo. *See* AR at 63-71. He testified that he accompanies her to doctor's appointments so that he can help her understand instructions, but she attends a fibromyalgia support group by herself. AR at 64-65, 68. He noted that Plaintiff is in bed for approximately 90% of each day, and that she does not have friends or go out often. AR at 66. He stated that between the time the couple moved to New Mexico in 2010 and her DLI of June 2012, he

remembered that Plaintiff could not walk more than one block, could not lift anything over ten pounds, and could sit and stand approximately 20 to 30 minutes. AR at 67. Mr. Lane discussed some of the medications Plaintiff has taken, her weight gain, and her depression. AR at 69-71.

As in *Best-Willie*, Mr. Lane's testimony was "cumulative of [Plaintiff's] testimony concerning her limitations and reports of pain," as well as the record evidence. *See* 514 F. App'x at 736. Plaintiff also testified about her abilities during the relevant time period: she stated that from 2010 through June 2012, she could walk approximately one block, lift five pounds with her right arm and five to eight pounds with her left, and sit or stand approximately 30 minutes. AR at 54-55. She testified that she is in bed from approximately 12:30 p.m. to 6:00 or 6:30 a.m., and she stated in her Function Report that she no longer socializes or goes out. AR at 76-77, 208. The record and Plaintiff's testimony reflect that Mr. Lane frequently accompanies Plaintiff to doctor's appointments, that she has struggled with weight gain, and that she has tried a variety of medications to treat her symptoms. *See, e.g.*, AR at 48 (Plaintiff's testimony that she has experienced weight gain), 61 & 77-79 (Plaintiff's testimony that she cannot take pain or sleep medications), 393 (Aug. 31, 2011 treatment note that Mr. Lane is at the medical appointment), 405 (Mar. 25, 2013 treatment note that Mr. Lane is at the medical appointment and that Advil and Gabapentin cause upset), 463 (Aug. 28, 2014 treatment note that Plaintiff "had unexpected weight gain").

And the Court is satisfied that the ALJ considered all of these allegations. ALJ Pardo noted Plaintiff's weight fluctuations (AR at 30), her inability to take medications and her attempts to obtain alternative treatments (AR at 30), and her self-reports of her

14

limitations in lifting, standing, walking, sitting, etc. (AR at 29). Thus, Plaintiff has failed to show that the ALJ committed legal error in considering Mr. Lane's testimony, and the Court will not remand on this issue.

### C. Plaintiff fails to show error in the ALJ's evaluation of her credibility and her allegations of pain.

Finally, Plaintiff argues that ALJ Pardo failed to analyze Plaintiff's credibility or her description of her symptoms according to the process mandated by *Luna* and SSR 96-7p. *Doc. 17* at 23-27. Pursuant to SSR 96-7p, the ALJ "must . . . make a finding on the credibility of [Plaintiff's] statements about symptoms and their functional effects . . . ." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). "It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* at *2; *see also Kayser v. Berryhill*, No. 16-cv-0978 SMV, 2017 WL 4857442, at *3 (D.N.M. Oct. 25, 2017).

"Specifically, in evaluating the credibility of a claimant's subjective complaints, the ALJ follows the steps outlined in *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987)." *Kayser*, 2017 WL 4857442, at *3. The ALJ must first accept Plaintiff's subjective allegations as true and "determine whether [she] has a medically determinable impairment 'that could reasonably be expected to produce the alleged [symptoms].'" *Id.* (quoting *Luna*, 834 F.2d at 163; citing SSR 96-7p, 1996 WL 374186, at *2) (alteration in original). "'If an appropriate nexus does exist,' the ALJ must next consider all of the relevant evidence 'to determine whether [her] [symptoms are] in fact disabling.'" *Id.* (quoting *Luna*, 834 F.2d at 163 (internal citation omitted); citing SSR 96-7p, 1996 WL

15

374186, at *2). The ALJ is required to "consider 'the medical data previously presented, any other objective indications of the degree of [the symptoms], and subjective accounts of the severity' in determining whether the ALJ believes'" Plaintiff's allegations. *Id.* (quoting *Luna*, 834 F.2d at 163).

The Court may not reweigh the record evidence; it may only review the ALJ's "decision to ensure that [he] applied the correct legal standard and that [his] findings are supported by substantial evidence." *Id.* (citing *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)). Boilerplate language is insufficient, as the ALJ "must give reasons for [his] decision[]." *Id.* (quoting *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988)). The ALJ "need not discuss 'every piece of evidence,' *Clifton*, 79 F.3d at 1010," but his "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.' *Kepler [v. Chater]*, 68 F.3d [387,] 391 [(10th Cir. 1995)]." *Kayser*, 2017 WL 4857442, at *4 (internal quotation marks and brackets omitted).

Plaintiff argues that ALJ Pardo merely offered boilerplate language in finding that her "determinable impairments could reasonably be expected to cause the alleged symptoms[,]" but her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Doc. 17* at 24 (quoting AR at 31). While ALJ Pardo did recite boilerplate language, the Court finds that his findings are supported by and linked to substantial evidence.

Earlier in his decision, ALJ Pardo considered Plaintiff's testimony and the limitations she described on her Function Report. AR at 29-30 (discussing AR at 37-81,

16

206-14). The ALJ found that "the evidence only partially supports [Plaintiff's] allegations[,]" and he described that evidence in more detail throughout the opinion. AR at 29; *see also* AR at 30-31. In accordance with SSR 96-7p, the ALJ described Plaintiff's daily activities (AR at 27-28), her allegations of pain and other symptoms (AR at 29-31), factors that aggravate (i.e., medications and diet) and alleviate (i.e., the alternative treatments Plaintiff tried) her symptoms (AR at 30-31), and the medications she has unsuccessfully tried to manage her symptoms (AR at 30). *See* SSR 96-7p, 1996 WL 374186, at *3 (describing the kinds of evidence an ALJ must consider when assessing a claimant's credibility). Again, ALJ Pardo's summary of the record leaves something to be desired, but it is adequate for the Court to find that his decision is supported by substantial evidence.[4]

Plaintiff briefly argues that the ALJ "rejected **all** opinion evidence in the record[,]" making it "difficult to determine on what, if anything, [he] based his RFC upon." *Doc. 17* at 25. As the Commissioner points out, ALJ Pardo "discounted the opinions of the State agency doctors to Plaintiff's benefit, assessing RFC limitations where those doctors opined that no limitations were supported." *Doc. 19* at 15 (citing AR at 31). Further, the Commissioner responds, "it is well-settled that an ALJ need not base RFC findings on a medical source opinion." *Id.* at 16 (citing *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012)). In *Chapo*, the plaintiff "argue[d] that the ALJ's physical RFC determination

---

[4] Plaintiff argues in her reply brief that the ALJ ignored evidence from 2011-12 "that is remarkably consistent with her hearing testimony." Doc. 22 at 7 (citing AR at 48, 297, 694, 44, 374, 381-82, 386, 56, 542). The Court has examined the cited records and does not agree that the evidence is sufficient to meet Plaintiff's burden. As the Tenth Circuit has found, the Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo.'" *Lax*, 489 F.3d at 1084 (internal quotations omitted).

lack[ed] substantial evidentiary support because the conclusion that she can do light work [was] not found in" either of the doctors' opinions the ALJ considered. 682 F.3d at 1288. The ALJ in *Chapo* rejected one physician's opinion, gave weight to the other "opinion, and then tempered it, *in the claimant's favor . . . .*" *Id.* The plaintiff then argued that "components of an RFC assessment lack substantial evidentiary support unless they line up with an expert medical opinion." *Id.* The Tenth Circuit found, however, that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Id.* "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Id.* (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)) (subsequent citations omitted).

*Chapo* guides the Court's decision here. Plaintiff fails to show that ALJ Pardo erred in determining the RFC, and the Court will not remand based on this issue.

## V. Conclusion

The Court finds that the ALJ's decision is supported by substantial evidence, and Plaintiff has failed to show legal error requiring remand. The Court will deny Plaintiff's motion to remand in its entirety.

Wherefore**,**

**IT IS ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 17*) is **DENIED**.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent